S:\DisclosureStatmt\KennethThompson.disclosure.statement.wpd

GENOVA, MALIN & TRIER LLP
Attorneys for the Debtor
Hampton Business Center
1136 Route 9
Wappingers Falls, New York  12590
(845) 298-1600
Andrea B. Malin, Esq. (AM4424)
Michelle L. Trier, Esq. (MT1212)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
POUGHKEEPSIE DIVISION
-------------------------------------------------------X
In re:

KENNETH THOMPSON, LLC,

          CHAPTER 11
          CASE NO. 23-36025 (CGM)

                       Debtor.
-------------------------------------------------------X
DATED: January 22, 2024

# DISCLOSURE STATEMENT
# PURSUANT TO 11 U.S.C. § 1125

**THIS IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF THE PLAN.  ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT.  THIS DISCLOSURE STATEMENT IS BEING SUBMITTED FOR APPROVAL BUT HAS NOT BEEN APPROVED BY THE COURT.**

       On December 13, 2023, the debtor filed a voluntary petition for reorganization pursuant to Chapter 11 of Title 11 of the United States Code with the United States Bankruptcy Court for the Southern District of New York. On January 22, 2024, the debtor filed its proposed Plan of Reorganization (the "Plan").  This is the proposed Disclosure Statement (the "Disclosure Statement") in connection with such Plan.

       Pursuant to § 1125 of the Bankruptcy Code, the debtor has prepared this Disclosure Statement for submission to the holders of claims against or interests in the debtor with adequate information about the debtor and the Plan to make an informed judgment before voting to accept or reject the Plan.   A copy of the Plan accompanies this Disclosure Statement.   The approval of this Disclosure Statement by the United States Bankruptcy Court as containing adequate information does not constitute a recommendation by the Court as to the merits of the Plan.  The approval of this Disclosure Statement by the Court as containing adequate information pursuant to 11 U.S.C. § 1125 enables the debtor to solicit the holders of claims and interests against the debtor for the purpose of

accepting or rejecting the Plan.

The "Effective Date" of the Plan shall mean the date upon which the Order of Confirmation is final and non-appealable.

A Creditors' Committee has not been appointed in the case.

# I.
# DEFINITIONS

1. "Administrative Claim" shall mean a claim for any cost or expense of administration with priority under section 503(b) or 507(a)(1) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estate and operating the business of the Debtor (such as wages, salaries or commissions for services and payments for goods and other services and leased premises); (b) compensation for legal, financial advisory, accounting and other services and reimbursement of expenses awarded or allowed under section 330(a) or 331 of the Bankruptcy Code, including Professional Fee Claims; and (c) all fees and charges assessed against the Estate under 28 U.S.C. sections 1911 through 1930.

2. "Allowed Claim" shall mean a Claim or any portion thereof (a) as to which no objection to allowance or request for estimation has been interposed on or before the Consummation Date or the expiration of such other applicable period of limitation as may be fixed by the Bankruptcy Code, the Bankruptcy Rules, the Court, or the Plan, (b) as to which any objection to its allowance has been settled, waived through payment, or withdrawn, or has been denied by a Final Order, (c) that has been allowed by a Final Order, (d) as to which the liability of the Debtor and the amount thereof are determined by final order of a court of competent jurisdiction other than the Court, or (e) that is expressly allowed in a liquidated amount in the Plan, *provided however,* that with respect to an Administrative Claim, that nothing herein shall be deemed to require holders of Administrative Claims incurred by the Debtor in the ordinary course of business, including the actual, necessary costs and expenses of operating the business of the Debtor, to make a request for payment of such Administrative Claim pursuant to Section 503(a) of the Bankruptcy Code.

3. "Assets" means any and all real or personal property of any nature, including, without limitation, any real estate, buildings, structures, improvements, privileges, rights, easements, leases, subleases, licenses, goods, materials, supplies, furniture, fixtures, equipment, work in progress, accounts, chattel paper, inventory, intellectual property rights and any other general intangibles of the Debtor or Liquidating Debtor, as the case may be, of any nature whatsoever, including, without limitation, all property of the Estate.

4. "Bankruptcy Code" shall mean Title 11, United States Code (Title I of the Bankruptcy Reform Act of 1978, Publ. 95-598, 92 Stat. 2549, as amended).

5. "Bankruptcy Court" or "Court" shall mean the United States Bankruptcy

Court for the Southern District of New York or such other court, as may have jurisdiction over the Chapter 11 case.

6. "Bankruptcy Rules" shall mean, collectively, the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended, the Federal Rules of Civil Procedure, as amended, as applicable to the Chapter 11 Case or proceedings therein, and the Local Rules of the Court, as applicable to this Chapter 11 case or proceedings therein, as the case may be.

7. "Bar Date(s)" shall mean the date(s), if any, designated by the Court as the last dates for filing proofs of Claims against the Debtor. Said date was fixed as March 1, 2024.

8. "Business Day" shall mean any day other than a Saturday, Sunday, or legal holiday as defined in Rule 9006(a) of the Federal Rules of Bankruptcy Procedure.

9. "Cash" shall mean legal tender of the United States or equivalents thereof.

10. " Claim" shall mean a claim against the Debtor as defined in Section 101(5) of the Bankruptcy Code, to wit: (a) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11. "Class" shall mean a category of holders of claims as set forth in Article II of this Plan.

12. "Confirmation" shall mean entry of an Order of the Court confirming this Plan.

13. "Confirmation Date" shall mean the date upon which the Court enters the Confirmation Order.

14. "Confirmation Order" shall mean the Order of the Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code.

15. "Consummation Date" means the occurrence of the Initial Distribution Date.

16. "Creditor" means any holder of a Claim.

17. "Debtor" shall mean KENNETH THOMPSON, LLC, as debtor-in-possession, prior to the Confirmation Date.

18.     "Disclosure Statement" shall mean the written disclosure statement that relates to the Plan, dated January 22, 2024, as may be amended, supplemented, or modified from time to time, and that is prepared and distributed in accordance with Sections 1125 and 1126(b) of the United States Bankruptcy Code and Fed. R. Bankr. P. 3018.

19.     "Disputed Claim" shall mean (a) any claim or portion of a claim (other than an Allowed Claim), which has been filed pursuant to Section 501(a) of the Bankruptcy Code as unliquidated or contingent, or (b) a claim which has been filed pursuant to Section 501(a) of the Bankruptcy Code as to which an objection to the allowance thereof has been interposed within the time limitation fixed by the Bankruptcy Code, by an order of the Court, or by this Plan, which objection has not been determined in whole or in part, by a Final Order.

20.     "Distribution" means the Cash or Assets to be distributed to holders of Allowed Claims under Article II of the Plan.

21.     "Distribution Dates" means collectively the Initial Distribution Date, any Subsequent Distribution Date and the Final Distribution Date.

22.     "Effective Date" means the date which is a business day selected by the Debtor occurring after the closing of the purchase and sale contract but not more than 30 days thereafter.

23.     "Entity" shall have the meaning provided by Section 101(15) of the Bankruptcy Code.

24.     "Estate" shall mean the estate of Debtor created in the Reorganization Case by Section 541 of the Bankruptcy Code.

25.     "Final Order" shall mean an order of judgment of the Court which has not been reversed, stayed, modified or amended and as to which the time to seek re-argument, appeal or seek certiorari or review has expired and as to which no appeal or petition for certiorari or review is pending or as to which any right to appeal or to seek certiorari or review has been waived.

26.     "Impaired" shall mean, when used with reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of Section 1124 of the Bankruptcy Code.

27.     " Insiders" shall have the meaning provided by Section 101(31) of the Bankruptcy Code.

28.     "Lien" shall have the meaning provided by Section 101(37) of the Bankruptcy Code.

29.     "Petition Date" means December 13, 2023, the date on which the Debtor filed its petition for relief commencing the Chapter 11 case.

30.  "Plan" means the Plan of Reorganization dated January 22, 2024 and any exhibits thereto and any documents delivered in connection therewith, as the same may, from time to time, be amended by any duly authorized amendment or modification to the extent permitted therein or by the Bankruptcy Code or Federal Rules of Bankruptcy Procedure.

31.  "Priority Claim" shall mean a Claim which qualifies as such under Section 507(a)(3),(4) and (6) of the Bankruptcy Code.

32.  "Priority Tax Claim" shall mean a Claim which qualifies as such under Section 507(a)(8) of the Bankruptcy Code.

33.  "Professionals" shall mean those persons employed pursuant to an order of the Court in accordance with Sections 327 and 1102 of the Bankruptcy Code and to be compensated for services rendered, pursuant to sections 327, 328, 329, 330 and 331 of the Bankruptcy Code, or (b) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

34.  "Professional Fees" shall mean all Allowed Claims for compensation and for reimbursement of expenses under sections 328 and 330 of the Bankruptcy Code.

35.  "Schedules" shall mean the schedules of assets and liabilities and the statements of financial affairs, if any, filed in the Bankruptcy Court by the Debtor as such schedules or statements may be amended or supplemented from time to time in accordance with Fed. R. Bankr. P. 1009 or orders of the Bankruptcy Court.

36.  "Secured Claim" shall mean (a) a Claim that is secured by a lien on property in which the Estate has an interest, in which lien is valid, perfected and enforceable under applicable law or by reason of a Final Order, or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Creditor's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code, or (b) a Claim Allowed under this Plan as a Secured Claim.

37.  "Unimpaired" shall mean not impaired within the meaning of section 1124 of the Bankruptcy Code.

38.  "Unsecured Claim" shall mean any Claim that is not an Administrative Claim, a Priority Claim, a Priority Tax Claim, a Secured Claim or an Interest.

39.  "U.S. Trustee" shall mean the Office of the United States Trustee for Region 2, Southern District of New York.

## II.
## SOLICITATION AND VOTING

Each impaired creditor may vote on the Plan by filling out and mailing the accompanying ballot for accepting or rejecting the Plan and mailing same to the attorney for the debtor, GENOVA, MALIN & TRIER LLP, Hampton Business Center, 1136 Route 9, Wappingers Falls, New York, 12590. Such ballot must be filed with the attorney for the debtor by the date stated on the accompanying ballot. As a creditor, your vote on the Plan is important. The Plan can be confirmed by the Court if it is accepted by each class of impaired claims and/or interests set forth in the Plan. A class of claims is deemed to have accepted the Plan when creditors in the class holding at least a majority of voting claims in number and two-thirds (2/3) in dollar amount have voted to accept the Plan.

Please note that there are no impaired classes under the Plan. As such, the debtor need not seek acceptances of the Plan from any classes. Pursuant to the Bankruptcy Code, all unimpaired classes are deemed to have accepted the Plan. A class of claims or interests is impaired under a plan unless, with respect to each claim or interest of such class the plan:

(1)    leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest;

(2)    notwithstanding any contractual provisions or applicable law that entitles the holder of such claim or interest to demand or receive accelerated payment of such claim or interest after the occurrence of a default--

    (a)    cures any such default that occurred before or after the commencement of the case;
    (b)    reinstates the maturity of such claim or interest as such maturity existed before such default;
    (c)    compensates the holder of such claim or interest for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; and
    (d)    does not otherwise alter the legal, equitable, or contractual rights to which such claim or interest entitles the holder of such claim or interest.

## III.
## THE PLAN OF REORGANIZATION

The Plan is based on the debtor's belief that it is in the best interests of all parties to avoid a forced liquidation, as such cash liquidation would be an economic waste to itself, its creditors and the community in which it is located. (Calculations of the liquidation values are annexed hereto as Exhibit A.)

The Plan provides for the creation of three (3) classes of claims and interests to be paid in the following manner:

Class 1 - Costs and expenses of **administration** as defined in the Bankruptcy Code, including, among other things, legal fees and accounting fees, post-petition accounts payable and post-petition taxes, will be paid in full or in accordance with an agreement with said creditor. At the present time, it is estimated that administration expenses will consist of the following: 1) approximately **$15,000.00** in attorneys' fees owed to GENOVA, MALIN & TRIER LLP, counsel to the Chapter 11 debtor, subject to allowance by this Court. Said firm received a retainer of $10,238.00; and 2) U.S. Trustee quarterly fees, if any, shall be paid on the effective date of the Plan and shall continue to be paid post-confirmation, pursuant to 28 U.S.C. §1930, until such time as the Court enters a final decree closing the case. Total unpaid administrative debt is estimated at $5,000.00.

Class 2 – The secured claim of KEYBANK NATIONAL ASSOCIATION ("KEYBANK") as secured by a first mortgage lien against the debtor's real property located at 208 Route 44, Millerton, New York (the "Property"). The total of the obligation due to KEYBANK is approximately THREE HUNDRED AND SEVENTY-FIVE THOUSAND DOLLARS ($375,000.00).

KEYBANK shall retain its first mortgage lien against the Property and the debtor shall pay claim as follows:

(1) Upon the Effective Date of the Plan, the debtor shall pay the sum of $60,000.00 to KEYBANK. The balance of KEYBANK's secured claim, in the approximate sum of $315,000.00 shall be paid (with six percent (6%) interest) over the debtor's sixty (60) month Plan of Reorganization, resulting in monthly payments of $6,090.00. Payments shall be due on the fifteenth of each month, with the first payment due in the month following confirmation of the debtor's Plan.

(2) The debtor shall maintain appropriate insurance on the Property and pay the property and school taxes to the municipalities directly.

This Class is not impaired and its vote will not be solicited.

Class 3 - The interest of the stockholdersof the debtor, KENNETH THOMPSON (100%), will not be impaired. Said individual will retain one hundred percent (100%) of his ownership interest in the reorganized debtor, but shall not receive any dividends or payments under the Plan. Said individual noted above owns one hundred percent (100%) of the outstanding shares of the debtor corporation, and is an insider as defined by the Bankruptcy Code.

The total amount reflected as unsecured debt does not include the claims of any insiders, as said term is defined by 11 U.S.C.§101(31). KENNETH THOMPSON shall retain his interest as holder of the shares of stock in the corporation.

This class is not impaired and its vote will not be solicited.

-----------------------------------------

Upon confirmation, the reorganized debtor shall be entitled to manage its affairs without further Order of this Court. However, the Court will retain jurisdiction for the purposes of any claims or enforcement issues post-confirmation.

THE FOREGOING IS A BRIEF SUMMARY OF THE PLAN AND SHOULD NOT BE SOLELY RELIED UPON FOR VOTING PURPOSES. CREDITORS ARE FURTHER URGED TO CONSULT WITH THEIR OWN COUNSEL OR WITH EACH OTHER IN ORDER TO FULLY UNDERSTAND THE PLAN. THE PLAN REPRESENTS A PROPOSED LEGALLY BINDING AGREEMENT BY THE DEBTORS, AND AN INTELLIGENT JUDGMENT CONCERNING SUCH PLAN CANNOT BE MADE WITHOUT UNDERSTANDING IT.

## IV.
## EXECUTION AND IMPLEMENTATION OF THE PLAN

The funds necessary for the satisfaction of creditors' claims shall be generated from the rent received in the ordinary course of the debtor's business. Distributions necessary to creditors in all classes shall require a monthly reserve of approximately $6,100.00 over the life of the Plan. Please see Exhibit "B" for a projection of income and expenses over the life of the Plan.

The maximum amount of cash that will be necessary to confirm the Plan is expected to be approximately $71,000.00 as and for the initial payments to Classes 1 and 2 claims. Said funds shall be generated from the monthly rental income of the debtor and reserves built up by the debtor.

Upon confirmation, the reorganized debtor shall be entitled to manage its affairs without further Order of this Court. However, the Court will retain jurisdiction for the purposes described in Article V of the Plan until it has been fully consummated. The Plan of Reorganization is annexed hereto Exhibit "D".

## V.
## FINANCIAL STATEMENTS AND INFORMATION

A Statement of Assets and Liabilities of the debtor as of December 31, 2023, has been annexed hereto as Exhibit "A" and should be inspected by all interested parties. The financial information provided herein is unaudited. The liquidation values are based upon appraisals obtained by the debtor unless otherwise set forth, and are estimates of the amounts for which such assets could be sold at a forced sale or by a bankruptcy trustee. Fair Market Value is the value of the item if sold at arm's length between a willing buyer and a willing seller.

Also, find annexed hereto a compilation of a Projected Income and Expense Statement (Exhibit "B"); a Pro Forma Balance Sheet (Exhibit "C") and the Proposed Plan of Reorganization (Exhibit "D").

## VI.
## NATURE OF DEBTOR'S BUSINESS

KENNETH THOMPSON, LLC was formed in 2004 and is a real estate holding company. Kenneth Thompson, LLC owns commercial real property located at 208 Route 44, Millerton, New York (the "Property"). The Property consists of an approximately 3 acre, mixed use parcel with a 23,000 square foot building (housing 7 rentable spaces). Prior to the filing of the Chapter 11 petition, as a result of Covid-19, the debtor's commercial tenants suffered a downturn in business and subsequently, stopped rental payments for a period. The debtor's first mortgage obligation with KEYBANK matured and the debtor entered into a forebearance period. The debtor has exerted substantial time, energy, and funds to manage and maintain the property. In recent months, the Property has demonstrated an ability to support itself and the KEYBANK mortgage obligation. The Chapter 11 filing has provided Kenneth Thompson LLC with the opportunity to pay KEYBANK in full, now that its tenants have resumed paying rent.

## VII.
## OWNERSHIP AND MANAGEMENT

A. <u>Ownership</u> - All of the issued and outstanding stock of the debtor, KENNETH THOMPSON, LLC, is owned as follows:

KENNETH THOMPSON - 100 percent of the shares.

B. <u>Management</u> - KENNETH THOMPSON is the only member of the debtor. The Plan contemplates that there will be no change in the officers, directors and management of the debtor. The debtor expects the following individual to act, post-confirmation, as management of the debtor:

KENNETH THOMPSON - Managing Member

There is no anticipated compensation for management of the debtor company post-confirmation.

## VIII.
## LEASES

The debtor contemplates the maintainence of the leases with the tenants at the Property, to the extent same exist. The debtor does not contemplate rejection or assumption of anyother executory contracts or leases.

## IX.
## **MISCELLANEOUS**

The debtor has examined into the existence of any possible fraudulent conveyances as defined in 11 U.S.C. Section 548 and preferences as defined in 11 U.S.C. Section 547 and as to the best of the debtor's knowledge and belief, none exist.

No pre-petition litigation is currently pending.

Should a default occur on any payments to be made pursuant to the Plan, the Bankruptcy Court shall retain jurisdiction so that any claimant herein shall have recourse to the Bankruptcy Court and may request a conversion to a Chapter 7 liquidation proceeding upon proper application therefor.

Dated: Wappingers Falls, New York
January 22, 2024

| | |
|---|---|
| KENNETH THOMPSON, LLC | GENOVA, MALIN & TRIER LLP<br>Attorneys for the Debtor |
| By: /s/ Kenneth Thompson<br>Kenneth Thompson, Managing Member<br>208 Route 44<br>Millerton, NY 12546 | By: /s/ Michelle L. Trier<br>MICHELLE L. TRIER (MT1212)<br>1136 Route 9<br>Wappingers Falls NY 12590 |